Sanguinett v. Webster.

SANGUINETT et ux. v. WEBSTER et al., Appellants.

Division One, January 9, 1900.*

153  343
87a 622

153  343
88a 172

153  343
95a 5349

1. **Third Amended Petition:** MOTION TO STRIKE OUT. A motion to strike out a third amended petition should not be sustained if the cause of action stated in the original and last petition is the same.

2. ———: ———: CAUSE OF ACTION: WAIVER. An objection raised by a motion to strike out the amended petition, that it changes the cause of action, is waived by answering after the motion is overruled.

3. **Assignment of Husband to Wife:** CAUSE OF ACTION: PAROL. A cause of action may be assigned by the husband to his wife by parol, and parol evidence may be used to prove such assignment. In this case it is held that the intent of the husband to transfer, the acceptance of the transfer by the wife, notice to the defendants and recognition thereof by them, may all be inferred from the evidence.

4. ———: ———: DATE: ADMISSIONS. Nor is the validity of such transfer in any way affected, so far as the defendants are concerned, by the fact that it may have been made on a day other than that alleged in the amended petition, nor that various dates therefor may have been assigned in the several petitions, nor that from the evidence no particular date can be fixed upon for the assignment, nor by the fact that the husband may have intended thereby to dodge the debts.

5. **Accounting:** DEFENSES: TITLE. Where plaintiffs sue for an accounting of the proceeds actually received by the defendants for the sale and transfer of the title to land which they accepted from the plaintiffs under a contract, the defendants are in no position to question the title thus received by them.

6. ———: COMPOUND INTEREST: TRUSTEES. Where there is no contract, and no loss to one party in a suit for an accounting, except the value of the use of the money found due him from the other, only statutory simple interest ought to be adjudged against the other for wrongfully withholding the money, the case not coming within the principle upon which rests the authority of courts of equity to charge *trustees* compound interest.

*NOTE—Decided November 14, 1899. Motion for rehearing filed; motion overruled January 9, 1900.

7. ———: INTEREST: VERBAL CONTRACT. And where equity requires that the same simple statutory interest should be charged both parties to the accounting, and the contract on which the suit is based is verbal, no higher rate should be allowed either, although one of the defendants testified that the contract was "we were to have back all our money with ten per cent interest."

8. ———: EXPENSE OF LOAN TO ONE PARTY. It is not proper in adjusting the account between parties who have entered upon a common venture, to allow one of them for the expense and commissions he paid in borrowing the money to pay for his share in the community property.

9. Referee: APPOINTMENT. A referee was appointed without an opportunity having been given the attorneys to agree. He afterwards resigned, and then opportunity was given the parties to agree, and on their failure to do so, the court appointed him again. *Held*, that the last appointment was valid.

10. Accounting: PARTITION FEE. The contract in this accounting suit provided for a partition fee of $500 to one of the defendants, and when partition was had in kind, the court reduced his fee to $300. *Held*, that the action of the court in the partition suit in allowing him a professional fee of $300, in no way affected the contractual obligation of the persons to this accounting suit to pay him the balance of the fee called for by the contract.

Appeal from St. Louis City Circuit Court.—*Hon. Thomas A. Russell*, Judge.

REVERSED AND REMANDED (*with directions*).

*Hiram J. Grover* and *G. B. Webster* for appellants.

(1) Defendants, motion to strike the third amended (being plaintiffs' fourth) petition from the files should have been sustained. (a) The fourth petition stated an entirely new cause of action. (b) After the demurrer to the second amended (being plaintiffs' third) petition had been sustained, defendants were entitled to judgment; and it was error to allow plaintiffs to file a fourth petition. R. S. 1889, sec. 2068; Gordon v. Burris, 125 Mo. 39. (2) The alleged assignment was not established by the evidence. Like any other contract, the contract of assignment must be founded upon:

(a) an intent to make it; (b) some palpable legal act done for the purpose of making that intent effective as an actual transfer of property; (c) an acceptance of the intended transfer by the assignee. Johnson Co. v. Bryson, 27 Mo. App. 341. (3) The contract entered into between M. P. Sanguinett and Webster Flanagan in the spring of 1877, did not create any trust. It was an executory contract, which required in its fulfillment many things to be done thereafter by both parties. It created no trust, but a partnership, in which the partners were agents for each other. Richards v. Grinnell, 63 Ia. 44; Yoeman v. Lasley, 40 Ohio St. 190. (4) Defendants' exceptions to the findings of the referee as to the amount of the rents, should have been sustained. (a) Sangunett's account of the rents filed before the referee was not sustained either by his affidavit, or by his sworn testimony. The statement itself was so much waste paper. (b) After that unsupported statement had been filed, Flanagan, in Sanguinett's presence, testified that Sanguinett has several times told him that the rents he was collecting amounted to four hundred and twenty dollars per annum. Sanguinett was subsequently examined in his own behalf before the referee as to other matters, but did not deny he made such statements to Flanagan. (5) Compound interest is imposed as a punishment for some clearly proven intentional dereliction of duty, or for some breach of trust. It is never imposed where the act complained of is as consistent with right dealing, as with wrong dealing. Neither in the interlocutory decree, nor in the final decree, is there any finding of dereliction of duty or a finding of any fact upon which the decree for compound interest can be sustained. Indeed, on the evidence, there could be no such finding. Rumsey v. Street Ry., 142 Mo. 175. (6) Defendants should have been allowed interest at ten per cent per annum (the contract rate) on all the advances which they made and on all their moneys paid out by them for charges and expense. (a) It was part of the

original contract that they should have interest at ten per cent. (b) That was the current rate of interest in 1877, and for many years thereafter. (c) It is true the statute provided that a contract for a greater rate of interest than eight per cent must be evidenced by writing. But the plaintiffs after having received the benefit for ten years of defendants' money, furnished on a verbal contract, that defendants should receive ten per cent interest on their advances, are now estopped from setting up the statute of frauds to enable them to perpetrate a greater fraud on the defendants. 2 Herm. on Estop. and Res. Adj., sec. 196.

*M. Kinealy, Jas. R. Kinealy* and *R. S. MacDonald* for respondents.

(1) The allegations of the petition on which this cause was tried having been sustained by the proofs, the respondents were entitled to the decree rendered by the court below. Sanguinett v. Webster, 127 Mo. 32. (2) Compound interest was properly allowed in this case. Cruce v. Cruce, 81 Mo. 682; Bobb v. Bobb, 89 Mo. 421. (3) The general denial filed by defendants to the last amended petition, is a denial of their trust, and is a badge of fraud. Kerr on Injunctions, *445. (4) The assignment of Marshall P. Sanguinett is objected to as being merely verbal and a communication of a husband to a wife, and hence can not be proved. But this objection is groundless, as even if the words used by the husband to the wife in making the assignment can not be shown by the husband's testimony, the fact of assignment may be so shown, he being competent to. testify. Scrutchfield v. Santer, 120 Mo. 615. (5) It does not lie in the mouths of defendants to object to Mrs. Sanguinett's title, having recognized her as a beneficiary, received her conveyance, and thus become enabled to sell the property and receive the purchase money. The trustee, when called upon to account, can not deny the title of the *cestui que trust* to the trust estate. 1

Perry on Trusts, sec. 260; Flint on Trusts, sec. 156; Bigelow
on Estoppel (5 Ed.), 545.   (6)   Nor can the trustee deny
the right of the *cestui que trust* to an accounting on the ground
that the trust was created with the intent to defraud creditors.
Wolff v. Matthews, 39 Mo. App. 376; Brown v. Thayer, 12
Gray, 1; Tenant v. Elliott, 1 Bos. and Pul. 2; Farmer v.
Russell, 1 Bos. and Pul. 295; Gowan's Adm'r v. Gowan, 30
Mo. 474; Reid v. Williams, 48 Mo. 344.  (7) The direction of
Mr. Sanguinett to Webster and Flanagan to carry the account
in his wife's name and for her benefit, and their action there-
upon in making out the statement to her operated as a gift,
and as the delivery of the gift to Mrs. Sanguinett, and vested
the title completely in her without any other act necessary
on her part, the gift being plainly for her benefit.   Craw-
ford's Appeal, 61 Pa. St. 52; Noyes v. Brown, 33 Vt. 431;
Dillman v. McArder, 98 N. Y. 451; Nicolet v. Pillot, 24
Wend. 240; 8 Am. and Eng. Ency. of Law, 1322.

BRACE, P. J.—This is an appeal by the defendants from
a final decree and judgment of the circuit court of the city of
St. Louis in favor of the plaintiff Annie E. Sanguinett for the
sum of $10,715.77.   The plaintiffs' third amended petition
filed April 27, 1891, upon which the case was tried is as
follows:

"Plaintiffs, by leave of court, file this, their amended
petition, and state that the plaintiff Annie E. Sanguinett, is
and at all times hereinafter mentioned was, the wife of plaintiff
Marshall P. Sanguinett; that, heretofore, one Adele Tholozan
was the owner of the following described property, real estate,
situated in the city of St Louis and State of Missouri, and
being lots 1, 2, 3, 4, 5 and 14 of Tholozan subdivision in
United States surveys 2997 and 2998, in the Prairie des Noyes
Common Fields, situated and bounded as shown on the plat
of said subdivision, recorded in the St. Louis City Recorder's
office, with the report of the commissioners in the partition suit

of Schueler v. Bright et al., in book 601, page 7, which said lots contain, in the aggregate, 19 3-4 acres, more or less, including one-half of Chipewa street, south of lot 5; that afterwards said Adele Tholozan died at the said city of St. Louis, leaving a will, whereby the following named persons, amongst others, became entitled to portions of the estate of said Adele Tholozan, viz.: Mary E. Sanguinett, Charles C. Sanguinett, Amanda E. Sanguinett, Caroline Cozens, Charles E. Page and plaintiff Marshall P. Sanguinett; that afterwards a suit was instituted to partition the estate of said Adele Tholozan between her heirs, including the persons last above named, and in said suit certain tracts of land were set off to said last named persons, respectively, or to Armin L. O. Shueler and Annie E. Sanguinett, under the deed hereinafter mentioned, which said tracts of land so set off together, constituted all the real estate hereinbefore first described; that said Caroline Cozens, by her deed, dated April 12th, 1877, and recorded in book 579, page 481, in the recorder's office of the said city of St. Louis, conveyed all her interest in and to the above described real estate to plaintiff Annie E. Sanguinett; and plaintiffs say that the several tracts of land allotted to said several persons were so situated and of such a nature that they could not be sold separately, without great loss, but that they formed together a tract or body of land which, because of its shape, nature and situation, could be advantageously sold as a whole or entire body.

"Plaintiffs further state that, at the times in this petition mentioned, defendant Webster was an attorney-at-law, and he and defendant Flanagan carried on, at the city of St. Louis aforesaid, the business of agents for the purchase and sale of real estate, and the borrowing and lending of money as agents for commission paid them; that on or about August 1st, 1877, plaintiff Marshall P. Sanguinett made and entered into a verbal agreement with defendants severally and jointly, whereby it was mutually agreed that said Marshall P. San-

guinett should cause and procure conveyances, to be executed of the portions of land aforesaid, by the said owners thereof, respectively, including the said Annie E. Sanguinett, plaintiff herein, to some trustee to be selected by the parties to said agreement, and would himself execute a conveyance of any interest he had in said land to the same trustee, so as to vest in said trustee the title to the entire tract of land formed of said portions for the purposes following, viz.:   That said defendants should, as soon thereafter as might be most advantageous for the interest of the beneficiaries, under said contract hereinafter mentioned, sell all said tract of land, made of several portions as aforesaid, and cause and procure the said trustee to execute the necessary conveyance or conveyances to effectuate such sale or sales, and that out of the proceeds of the sale should be repaid to defendants any sums of money which might be advanced by defendants, as hereinafter stated, for the purpose of enabling said Marshall P. Sanguinett to obtain said necessary conveyances to said trustee, and of the remainder of said proceeds, one-fourth should be retained by the defendants as compensation for their services, under said agreement, and for the use of the money to be advanced by them, as hereinafter stated, and all the rest and residue of said proceeds were to be paid to plaintiff, Marshall P. Sanguinett.

"And it was further agreed by and between the defendants and said Marshall P. Sanguinett, as a part and provision of said agreement herein first mentioned, and for the consideration aforesaid accruing to said defendants, that defendants should advance to said Marshall P. Sanguinett, from time to time, such sums of money as would be required to obtain said conveyances of said portions of and from said owners other than plaintiffs.

"Plaintiffs further state that, then and thereupon, defendant and said Marshall P. Sanguinett selected one Armin L. C. Shueler, who was there and then a clerk in the employment of defendants, to act as such trustee, under and in pur-

suance of said agreement; that Shueler accepted said trust, and thereupon, and in pursuance of said agreement, the said Marshall P. Sanguinett after much effort and negotiation for the respective sums of money hereinafter mentioned, paid to the respective owners aforesaid and hereinafter named, obtained of each of them a conveyance of his or her respective portion of said land, that is to say, from said owner Mary E. Sanguinett her conveyance of her said portion to said Shueler, dated August 21st, 1877, and recorded in said recorder's office in book 575, page 378, for the sum of $600 paid her; from said owner, Charles C. Sanguinett, his conveyance of his said portion to said Shueler, dated September 7th, 1877, recorded in said recorder's office in book 582, page 44, for the sum of $400 paid to him; from said owner, Amanda E. Sanguinett, her conveyance of her said portion to said Shueler, dated November 3d, 1877, recorded in said recorder's office in book 587, page 71, for the sum of $400 paid to her; from said owner, Charles E. Page and wife, their conveyance of said portion of said Page to said Shueler, dated August 11th, 1877, and recorded in said recorder's office in book 576, page 126, for the sum of $1,000 paid them.

"Plaintiff's state that said sums of $600, $400, $400 and $1,000 were advanced to plaintiff Marshall P. Sanguinett to make said payments by defendants at or about the several dates of the conveyances last above mentioned under and by virtue of said agreement, and were by said Marshall P. Sanguinett paid to said several owners, as aforesaid.

"Plaintiffs further state that, in accordance with said agreement, and in pursuance thereof, on August 17th, 1877, plaintiffs executed a conveyance of the said portion of said land owned by plaintiff Marshall P. Sanguinett, to said Shueler, by their conveyance of said last mentioned date, recorded in said recorder's office in book 609, page 215; that in said deed last mentioned a consideration of $2,000 from said Shueler was expressed, but no money or consideration whatever was

paid by said Shueler therefor, for any of said conveyances, nor by any other person save by plaintiff Marshall P. Sanguinett, as aforesaid.

"Plaintiffs further state that, on or about the 1st day of April, A. D. 1878, defendants and plaintiff Marshall P. Sanguinett agreed to substitute defendants, or one of them, as trustee for the purpose of said agreement, instead of Shueler; that on or about the 17th day of April, 1878, said plaintiff Marshall P. Sanguinett, by verbal agreement, duly signed, transferred and set over all his right, title and interest in the aforesaid and first mentioned agreement, or contract, with defendants to plaintiff Annie E. Sanguinett, of which transfer defendants, from and after September 12th, 1878, at all times had due notice; that said Annie E. Sanguinett, who has, ever since said transfer, been and now is entitled to have and receive the profit and proceeds accruing from and under said agreement, or contract as her sole and separate property; that afterwards, on or about the 10th day of April, 1877, plaintiffs conveyed to said defendant Webster, in pursuance of said agreement of substitution, the portion of said land acquired by plaintiff Annie E. Sanguinett under the conveyance of Caroline Cozens, which last mentioned conveyance of plaintiffs is recorded in said recorder's office in book 589, page 489; and that by deed, dated June 19th, 1878, and recorded in said recorder's office in book 596, page 96, said Shueler conveyed all said tracts and portions of land conveyed to him, as aforesaid, to defendants, who thereafter held said lands as trustee for the purpose of said agreement.

"Plaintiffs state that, although money considerations were set forth and expressed in said deeds to defendants, as having been paid to the grantors therein, no consideration whatever was paid, and said deeds were solely and merely executed in pursuance of said agreement hereinbefore first mentioned between plaintiff Marshall P. Sanguinett and defendants, and in pursuance of the substitution of defendants.

"Plaintiffs further state that defendants afterwards, without the knowledge or consent of plaintiffs or either of them, and in violation of defendants' said trust, executed conveyances in trust of said real estate so vested in them to various persons, to these plaintiffs unknown, to secure the payment of large sums of money borrowed by said defendants for their own use and benefit, which deeds of trust continued to be liens on said real estate until its sale, as hereinafter mentioned.

"Plaintiffs further state that on or about March 29th, 1889, defendants conveyed said real estate so vested in them as aforesaid as trustees, for the purpose of said agreement, to Richard M. Scruggs, in secret trust for the use and benefit of defendants for the nominal consideration of twelve thousand dollars, and afterwards, said Scruggs in execution of said secret trust, and for the benefit of defendants and for a consideration and on terms and conditions unknown to plaintiffs, conveyed said real estate to the Hydraulic Press Brick Company, which now appears as the owner, of record, of the same.

"Plaintiffs further state that by the conveyances of said property last mentioned, the defendants have realized and obtained from, for and out of the property a large sum of money, to wit:   The sum of $20,000, for which it is their duty to account, to plaintiff Annie E. Sanguinett, and pay over to her the amount found due her on such accounting.

"Plaintiffs further state that since said conveyances last mentioned have been made, and said sum of money paid to and realized by defendants, aforesaid, plaintiff Annie E. Sanguinett demanded an accounting of the acts and doings and expenditures, if any, lawfully made by defendants under said agreement, and of the amount accruing to plaintiff Annie E. Sanguinett thereunder, and demanded payment of said amount to her, said Annie E. Sanguinett, under, the terms of said agreement, but defendants have refused to pay over to said Annie E. Sanguinett any money accruing to her, as aforesaid.

"Wherefore, plaintiffs pray that an account be taken

between the defendants and said Annie E. Sanguinett, of the matters, expenditures and sales aforesaid; that said trust be declared terminated; that if defendants hold any negotiable securities in their hands or choses in action obtained by said conveyances, or as proceeds, issues or profits of, or out of said real estate, they shall be sold or disposed of; that the defendants be required to account for any loss sustained by said Annie E. Sanguinett, in consequence of any failure on their part to properly and duly execute the trust reposed in them under and by virtue of said agreement, or of any breach of said trust, and that the defendants be ordered to pay over to said Annie E. Sanguinett whatever balance may be found due or accruing to her after all just credits shall have been allowed defendants, and for such other and further relief as may be equitable and proper in the premises."

A motion to strike out this petition on the grounds that demurrers to the first and second amended petitions herein had theretofore been sustained, and that this petition changed the cause of action, was overruled; and thereupon defendants filed a demurrer to the petition, which was sustained, and the plaintiffs brought the case here by appeal from the judgment rendered thereon—where the judgment was reversed, and the cause remanded, this court holding that the petition stated a good cause of action. [Sanguinett v. Webster, 127 Mo. 32.]

Thereafter on the eighteenth of March, 1895, the defendants answered the petition as follows:

"And now come the defendants, B. F. Webster and Francis G. Flanagan, and for answer to plaintiffs' petition, deny each and every allegation therein contained, and pray hence to be discharged with their costs.

"And further answering, these defendants state if, upon the hearing of this case, the court should decree an accounting, then these defendants aver that the plaintiffs are indebted to the defendants in a sum exceeding three thousand dollars for rents collected and received by them from the real property

described in plaintiffs' petition, which indebtedness should be brought into said accounting, and these defendants pray that the same shall then be decreed to be due to the defendants in said accounting."

Upon which the plaintiff joined issue by reply, and the case coming on to be heard, was submitted to the court on the evidence, and thereupon the following interlocutory decree was rendered on the nineteenth of July, 1895:

"Now come the parties to this case, the plaintiff Marshall P. Sanguinett appearing by his attorney of record, plaintiff Annie E. Sanguinett appearing by her attorneys of record, and defendants appearing by their attorneys of record. And this cause having been submitted to the court on the pleadings and evidence, and the court being fully advised of and concerning the same, finds and adjudges that plaintiff Marshall P. Sanguinett, in the year 1877, entered into a contract with the defendants, whereby it was agreed that the said Marshall P. Sanguinett should procure conveyances to a trustee of the property described in the petition in this case, as having been conveyed to one Schueler by Mary E. Sanguinett, Amanda E. Sanguinett and Charles E. Page and wife, to be made by the parties last named, and that the defendants should advance the money necessary to procure such conveyances; that Marshall P. Sanguinett and Annie E. Sanguinett should execute the conveyances to the said trustee set forth in said petition as having been executed by them; that the property so conveyed should be sold by the defendants, and that after the payment out of the proceeds of the sale of all expenses, including any amounts which might be borrowed on the security of deeds of trust on the property so conveyed, if it were necessary to borrow money secured by deeds of. trust on the property for the purposes of the agreement, and the interest on such loans, one-fourth of the profits arising out of the transaction should be retained by the defendants and the other three-fourths should be paid to the plaintiff Marshall P. Sanguinett: that Marshall

P. Sanguinett performed his part of the contract, and all the property described in the petition was conveyed to the defendants as trustees, for the purpose of carrying out the contract; that said Marshall P. Sanguinett continued thereafter to collect the rents of the property so conveyed, and on or about the twelfth day of September, 1877, assigned his interest in the contract to plaintiff Annie E. Sanguinett, who thereafter was the owner of said interest, and entitled to the benefits of the contract; that this assignment of Annie E. Sanguinett was known to defendants at the time it was made, and assented to by them; that on the twelfth day of September, 1877, defendants, recognized said Annie E. Sanguinett as the owner of said interests of Marshall P. Sanguinett; and that on March 29, 1889, defendants sold all said property for the sum of $16,000, have received the purchase money, and have since retained the same, have refused to account with Annie E. Sanguinett for such purchase money, or any of the profits under the contract, and have converted said purchase money to their own use.

"The court further finds and adjudges, that profits were made out of the contract and the transactions under it, and that the conduct of the defendants as trustees, and the benefits they received from the retention and conversion of the funds obtained by them by the sale of said property, entitles the plaintiff to recover interest, compounded annually, on these funds, since they have been received by the defendants.

"The court further finds that the defendants borrowed money secured by deeds of trust on said property, but does not now determine whether the making of such loans was proper in the execution of the trust under said contract, reserving that question until the filing of the report of the referee, hereinafter mentioned. The court also reserves the question of the right, if any, of defendants to have the rents received by Marshall P. Sanguinett, as above stated, accounted

for in the statement of the account between plaintiff Annie E. Sanguinett and the defendants.

"And the court further adjudges that the defendants shall account to and with the plaintiff Annie E Sanguinett for their transactions, receipts and expenditures under said contract, and that the account shall be stated and the balances ascertained between said Annie E. Sanguinett and the defendants, and to that end the court doth further order that this cause be referred to Edward P. Johnson, Esq., to take such account.

"And the court doth further order and direct that in taking and stating said account, said referee shall ascertain the amount now in the hands of defendants from the sale of said property, calculating interests on the balance in their hands at the rate of six per cent per annum from March 29, 1889, compounded annually; that he shall ascertain the amount of expenses incurred by defendants in promoting the enterprise created by and undertaken under the contract aforesaid, and calculating interest thereon at the rate of six per cent per annum from the dates of payments; that he shall ascertain what sums, if any, were advanced by defendants on account of the purchase of said property, and when such sums were paid out and what interest has accrued thereon, calculating such interest at the rate of six per cent per annum from the date of the several advances; and that he shall ascertain what sums were borrowed on said property by defendants, and what portion of the advances made by them, if any, were in this way paid back to defendants, and the dates of same.

"And the court further orders and directs that the referee shall ascertain what rents were received by the plaintiffs on the property purchased, and to ascertain and report separately what rents were received by the plaintiffs from those portions of the property owned by them and conveyed to the trustee, and the dates at which such rents were received, and the court being unable with evidence now before it to make this interlocutory decree final, all other matters are reserved for further

consideration by the court until the filing of said report by said referee."

To the entering of this decree the defendants excepted and filed their motion to set the same aside and for a rehearing assigning among others the following ground therefor:

"The court had no right or authority to appoint Edward P. Johnson as referee, to state said account, without consulting the defendants, and without giving them the opportunity of agreeing with the plaintiffs upon a referee, as provided by section 2139 of the Revised Statutes of Missouri. The said defendants were not asked to suggest a name or to agree with the plaintiffs upon a referee."

Which motion being overruled the defendants filed their bill of exceptions, affidavit for an appeal from said interlocutory decree, and the court refusing to grant an appeal thereafter, on the 25th of September, 1895, the defendants made application to this court for a writ of prohibition against the said referee to restrain him from proceeding to take the account as directed in said interlocutory decree. This application coming on to be heard in due course, the writ was refused, by a decision rendered on the 21st of January, 1896. [State ex rel. v. Johnson, 132 Mo. 105.]

Pending this proceeding, the referee, after setting a day for the hearing, adjourned the same from time to time without taking further action until the twenty-seventh of January, 1896, when he tendered his resignation, which was accepted by the circuit court by the following order entered on the thirty-first of January, 1896: "It is ordered by the court that the resignation of Edward P. Johnson, Esq., heretofore appointed referee herein, as such referee, be and the same is hereby accepted, and that until Monday, February 3d, 1896, at 10 o'clock a. m. be granted parties to agree upon a referee."

And afterwards, to wit, on the third of February, 1896, the following proceeding appears of record: "Now, at this day,

it appearing to the court, that Edward P. Johnson, Esq., the referee heretofore appointed herein has resigned, that his resignation was accepted on the thirty-first day of January, 1896, and that the court on that day directed the parties to this cause to present the name of some person to act as such referee in the place and stead of said Edward P. Johnson, Esq., and it also appearing that the parties have not agreed upon any one to act as referee in this cause, the court doth now order that said Edward P. Johnson, Esq., be and is hereby reappointed to act as such referee, and that he be and is hereby directed to proceed forthwith, with the discharge of the duties as such referee, and report to this court with all convenient speed."

Afterwards on the seventh of February, 1896, Mr. Johnson qualified anew as referee under this order of appointment and thereafter in due course proceeded to hear the evidence of the parties on the accounts respectively submitted by them, and at the June term, 1896, submitted his report thereon making findings as follows:

"FINDINGS OF THE REFEREE.

"As the answer to the first direction depends on the answers to the second, third, and fourth, the latter will be taken up first, and as payments were made by defendants down to April 18th, 1889, and calculations of interest were made by the attorneys for the respective parties to and from the latter date, it is substituted for the 29th day of March, 1889, specified in the order of reference.

"*Defendants' Account.*

"The referee finds from the evidence that the amounts advanced by defendants, for the purchase of the property,

with interest thereon at the rate of six per cent per annum, from date of payment to April 18th, 1889, are as follows:

1877.

"Aug. 16, To Charles E. Page ................$   975.00
    Interest ......................... ...          682.50
Aug. 24, To Mary E. Sanguinett.................          600.00
    Interest.... ...... ......... ....          419.40
Sept. 7, To Charles C. Sanguinett..............          400.00
    Interest, .... ............. ....          278.07
Nov. 7, To Amanda Sanguinett.................          400.00
    Interest .......... ...... ....          274.27

    Total ...... .... ........ .......$4,029.24

"The referee further finds, from the evidence, that the amount of expenses incurred by defendants in promoting the enterprise under the contract, with interest thereon at the rate of six per cent per annum, from date of payment to April 18th, 1889, are as follows:

1877.

"Sept. 11, To Sterling & Webster, examination of
    title ........ ........ ........$   20.00
    Interest ...... ...:........ ......           13.92
Sept. 11, To Writing four deeds.................           20.00
    Interest ........ ...... ......           13.92
Sept. 11, To Recording three deeds............            3.00
    Interest ...... ...... .... ....            2.00
Nov. 7, To Recording one deed.................,            1.00
    Interest ........ ...... ......             .69
    1878.
May 11, To Recording one deed.................            1.00
    Interest ...... ...... .... ..             .65
June 10, To Recording one deed.....,..........            1.00
    Interest .......... ...... ....             .65
June 10, To Writing three deeds...............           10.00
    Interest .. ...... ......... ....            6.52
Oct. 10, To Portion of costs in partition..........          191.50
    Interest ........ .. ........ ....          120.45
    1879.
April 8, To Recording one deed .............,...            1.00
    Interest .................. ..:......             .60

| | |
|---|---:|
| Nov. 25, To Paid for taxes.................... | 493.12 |
| Interest ...... ...... ......... .. | 248.19 |
| 1882. | |
| Jan. 30, To Same........................... | 241.22 |
| Interest........... .. ............. | 104.45 |
| 1883. | |
| Feb. 20, To Same........................... | 110.78 |
| Interest .. ......... ......... | 40.78 |
| Interest.......................... | 90.09 |
| Interest .... ...... ....... .... | 29.42 |
| 1884. | |
| Dec. 31, To Same........................... | 126.56 |
| Interest ....... ............... | 33.28 |
| Dec. 31, To Dyer, Lee & Ellis, Attys' fees in Farris | |
| case ......................... ...... | 50.00 |
| Interest ...................... | 13.09 |
| 1885. | |
| Dec. 31, To Paid for taxes.................... | 108.03 |
| Interest ........ ......... ...:.. .. | 19.77 |
| 1887. | |
| Jan. 31, To Same ......................... | 96.98 |
| Interest ...:.... ......... | 12.11 |
| Dec. 31, To Same............................. | 96.98 |
| Interest ...................... .. | 6.31 |
| 1889. | |
| April 18, To Same........................... | 134.36 |
| April 18, To Recording Scruggs' deed of trust..... | 2.25 |
| April 18, To Certificate of title to sell same...... | 10.00 |
| Add purchase money, and interest, as above found. . | $4,029.24 |

Making a total of credits to defendants of......$6,505.00.''

## Plaintiffs' Account.

The referee further finds from the evidence that pending the partition proceedings, beginning with October 2, 1877, and ending with October 4, 1878, plaintiff M. P. Sanguinett collected rents from the entire tract partitioned, the sum of $1,267.50, but that only $454.87 of this amount was received

on the property purchased, and $812.63 of the same was collected from the property of the other parties to the suit.

The dates and amounts of these collections in gross are stated in Exhibit B, and it is deemed unnecessary to copy them here.

Of the $454.87 rents thus received from the property purchased, $121.73 were received from the property owned by plaintiffs and conveyed by them to the trustees. The particular dates on which the items constituting the last two sums were collected are not disclosed by the evidence and can not be found, but they are presumed to be portions of the various collections as they were made.

The referee further finds from the evidence, that subsequent to the partition proceedings, beginning with January 6th, 1879, and ending with April 1st, 1889, plaintiff M. P. Sanguinett collected rents from the portion set apart in said proceedings for the benefit of the parties to this suit, in the sum of $1,877.25. The dates and amounts of those collections, in gross, are stated in said Exhibit B (excepting the last item of $40, inserted by the referee, the date of the collection of which can not be stated, as the evidence fails to disclose it) and it is deemed unnecessary to copy them here. Of the latter amount, $543.08 was received from the property owned by plaintiffs, and conveyed by them to the trustees. The particular dates on which the last items constituting the latter sums were collected are not disclosed by the evidence, and can not be found, but they are presumed to be portions of the various collections of $1,877.25, as they were made. The total amount of rents received from the property purchased, and that conveyed by plaintiffs to the trustees, is $2,332.12, and of the latter amount, $655.81 was collected from the property owned by plaintiffs, and conveyed by them to the trustee.

And started the account as follows:

*"Final Statement of Account.*

"Under the foregoing, the account stands as follows:
1889.
"April 18, Received by defendants on sale of
                property ........ .... ......$16,000.00
            By amounts advanced, and interest.... 6,505.00

                                                    $9,495.00
            Defendants' share 1-4 (which deduct
                from above) is the sum of.......$ 2,373.75

Leaves balance in defendants' hands of........$ 7,121.25
Interest, seven years at 6 per cent. comp. to April
            18, 1896 ...... .... ...... ..$ 3,586.44

                                            $10,607.69."

To which findings and report the defendants afterwards on the twelfth of September, 1896, filed twenty-six exceptions. Afterwards on the twenty-third of November, 1896, the court without passing upon defendants' said exceptions resubmitted the case to the referee by the following order:

"The referee's report having been filed herein, and exceptions made thereto, and it appearing to the court that said cause can not be finally determined without ascertaining more fully the account between plaintiffs and defendants, it is hereby ordered by the court that this cause be referred back to E. P. Johnson, the referee, to ascertain the value of the property conveyed by M. P. Sanguinett and Annie E. Sanguinett to the trustee, Shueler, or the defendants herein, at the time of such conveyance, and whether paid for by grantee, and to calculate the interest on such value, to date of sale, at the rate of 6 per cent per annum. Also, to adjust the rents collected from this property, and to state fully that account between the parties concerning the aforesaid matters. That said referee proceed at once, not later than the 25th day of Novem-

Sanguinett v. Webster.

ber, 1896, to take such account; and that he make report of his proceedings to this court, with all convenient speed; and the final determination of this cause is reserved until the filing of such report."

The referee having in due course further heard the evidence of the parties upon the matters re-submitted to him, on the tenth of December, 1896 reported the following supplemental findings and statement of the account:

"The referee finds, from the evidence and the agreement of the parties, as to the value, that the land conveyed by the plaintiffs to the trustee and the defendants, was then worth two hundred dollars per acre, and that no part of said value was paid by the grantees, and from the stipulation of said parties that there were 6.11 acres of the land so conveyed,

"He finds the value of the land, at that time to be. . $ 1,222.00
Interest at 6 per cent from October 18th, 1877, to
    April 18th, 1889. . . . . . . . . . . . . . . . . . . . . . .     843.18

       Total . . . . . . . . . . . . . . . . . . . . . . . . .$ 2,065.18
Rents collected by plaintiffs, as previously reported. $ 2,065.12
Interest on same, at 6 per cent, from time of collec-
    tion to April 18th, 1889. . . . . . . . . . . . . . .     843.02

       Total . . . . . . . . . . . . . . . . . . . . . . . . . . .$ 3,175.14
This leaves in plaintiffs' hands, after deducting the
    value of the lands conveyed, and interest. . . . $ 1,109.96
There is in the hands of defendants, as per previous
    report, after deducting advances and interest. $ 9,495.00

       Total net profits. . . . . . . . . . . . . . . . . . .$10,604.96
Amount of profits belonging to plaintiffs, 3-4. . . . . $ 7,953.72
Amount of profits belonging to defendant, 1-4. . . .    2,651.24

       Total. . . . . . . . . . . . . . . . . . . . . . . . . . . .$10,604.96
Amount in defendants' hands. . . . . . . . . . . . . . . .    9,495.00
Deduct the amount of their profits. . . . . . . . . . . .    2,651.24

       Net amount in defts'. hands. . . . . . . . . .$ 6,843.76

Comp. int. 6 per cent,from April 18, 1899, to April
 18, 1896 ................ .... ........ .......$  3,446.68

Amount due plaintiffs......,..........$10,290.44
 To the latter amount, interests at the rate of 6 per cent
from April 18, 1896, to the date of the decree, is to be added.

### *"Reasons For Foregoing.*

"As to the finding of the value of the property conveyed,
after evidence had been heard, it was agreed between the
parties that its value at that time was $200 per acre, and the
parties subsequently filed a stipulation that there were 6.11
acres of it, and one of the defendants testified that they had
not paid for it.

"In disposing of the value of the property conveyed by
plaintiffs, to the trustee and defendants, the referee allowed
the plaintiffs the value of it, with interest from the 18th day
of October, 1877, as plaintiffs accounted for the rents of it
from that time. This property represented the capital con-
tributed to the venture by plaintiffs, in like manner as the
money paid by defendants represented the capital they con-
tributed to it.

"The referee regarded the whole property as representing
the venture, and the rents collected from it, and the amount
realized on the sale of it, as representing the proceeds of the
venture; and that, before any profits were divided, each party
should be repaid his advances, with interest, in accordance
with the contract set out with the interlocutory order herein,
and that plaintiffs should be charged with interest on the
amount of rents collected and retained by them, and that
the net profits of the venture should be divided among the
parties, in accordance with the contract set out in the decree."

To this supplemental report the defendants filed ten
exceptions, and at the same time renewed their former excep-
tions to the original report. The exceptions to the supple-

Sanguinett v. Webster.

mental report were formally overruled on the twenty-fourth of December, 1896, and all the exceptions in effect overruled by the final decree in the cause, entered on the twenty-sixth of December, 1896, which is as follows:

"Now at this day come the parties to the above entitled cause by their respective attorneys of record and said cause being submitted to the court for a final decree; and upon inspection of the evidence heretofore adduced before the court, and of the original and supplemental reports of the referee filed in this cause, and having regard to the modifications of the first of said reports, by the court, and of the orders of this court on said reports, heretofore made, and upon hearing of what was alleged on the part of the said several parties, plaintiff and defendant respectively, the court doth find, order, adjudge and decree that the making of the loans obtained by defendants, set forth in their statement of account filed before the referee and secured in the last amended petition filed in this cause, were not proper or necessary, nor was any of said loans proper or necessary in or for the execution of the contract heretofore set forth in the interlocutory decree of this court, and were paid off by the defendants; and that the rents collected from said property by Marshall P. Sanguinett, and set forth in the original report of the referee in this cause, should rightfully be accounted for by plaintiff Annie E. Sanguinett, as part of the profits of the trust administered by the defendants under the contract set forth in said interlocutory decree, and in which defendant should share; and that in all other respects the said interlocutory decree is hereby affirmed. And it appearing to the court, in and by the said reports of the referee, that an account has been taken by said referee, between the defendants on the one hand and the plaintiff Annie E. Sanguinett on the other hand, of the transaction and dealings of the parties to the extent, and as directed, in and by said interlocutory decree, and that said account shows a balance due this day, by defendants to the plaintiff,

on account of the matters in said interlocutory decree described, of $10,715.77; the court doth order, adjudge and decree that the defendants are indebted to said Annie E. Sanguinett on account of the matters aforesaid, in the sum of $10,715.77, and that said Annie E. Sanguinett do recover from defendants said sum of $10,715.77.

"The court doth further order, adjudge and decree, that all the costs incurred in this cause shall be taxed against the defendants, and that execution do issue against the defendants for the sum of $10,715.77, in which they are adjudged indebted to plaintiff Annie E. Sanguinett, as aforesaid, and for the costs of this cause."

Afterwards during the same term and on the thirty-first day of December, 1896, the defendants filed their motion for rehearing which was on the same day overruled. Afterwards on the fourth day of January, 1897, the term of office of the Hon. Thomas A. Russell, the judge in division No. 7 of the circuit court before whom the foregoing proceedings were had, having expired, and his successor, Judge Selden P. Spencer, having qualified and entered upon the discharge of his duties as such, the defendants filed a motion to set aside the order of December 31, 1896, overruling their motion for rehearing, which motion, coming on to be heard, was on the twenty-fifth of January, 1897, overruled, and the defendant having properly saved their exceptions at each stage of the proceedings, thereafter in due course perfected their appeal.

The errors assigned for the reversal of the decree will be considered in the order in which we find them in the brief of counsel, and in connection therewith, the evidence, so far as necessary to a proper comprehension of the case, will appear in the course of the opinion.

(1) It is contended that the court erred in not sustaining defendants' motion to strike out the third amended petition upon which the case was tried, for the reasons in the motion stated, and heretofore noted. It is not necessary that the

questions argued by counsel on this point should be considered at length for the reason that the cause of action stated in the original and amended petition is the same, the only essential difference being that in the former, the contract is alleged to have been made by Mr. Sanguinett as the agent of his wife, and in the latter by him personally and afterwards assigned to his wife, and the objections to the petition raised by that motion were waived by the defendants' answer thereto, as has been repeatedly decided. [Holt Co. v. Cannon, 114 Mo. 514; Sauter v. Leveridge, 103 Mo. 615; Scovill v. Glasner, 79 Mo. 449; Fuggle v. Hobbs, 42 Mo. 537; Liese v. Meyer, 143 Mo. 547, and cases cited.]

(2)  When this case was here before, we held that "the husband had the undoubted right to assign to his wife as a gift his interest in the profits realized in the transaction, provided the rights of creditors of the former were not thereby affected." (127 Mo. 38.)  It is now contended that the assignment was not established by evidence on the trial.  It appears from the evidence that at the time the defendants and Marshall P. Sanguinett entered into the contract recited in the interlocutory decree, probably about the first of August, 1877, he and his wife each had an equal undivided interest in the real estate which was the subject of the contract. He testified that afterwards he transferred his interest in the contract to his wife, and further on that subject, as follows:

"A.   Yes, I transferred that in September, 1877, the 12th day of September; they made an accounting to me which was in my name, and I told them I wanted it in my wife's name, and they put it down 'Mrs.' in front of Sanguinett. . . .

"Q.   That was after you had informed them that you had transferred the matter to your wife?   A.   The same day. They gave me the statement that was made in my name, and I told them I wanted it transferred to my wife.

"Q.   He put 'Mrs.' on the paper and handed it to you? A.   Yes, he wrote 'Mrs.' on it and handed it to me.

"Q.   Now, after that arrangement was made, who acted as your wife's agent, or did she have any agent?   A.   After that I acted as her agent.

"Q   You acted as her agent?   A.   Yes, prior to that I acted on my own account."

The defendants were doing business at the time under the firm name of Sterling & Webster, and the statement which it is conceded they gave to Mr. Sanguinett is as follows:

"Sept. 12, '77.

"Sterling & Webster, in account with Mrs. M. P. Sanguinett.

| | |
|---|---:|
| To amount of loan from Mrs. Winter | $1,300.00 |
| To amount of loan from Mrs. Sutter | 700.00 |
| To amount 2d loan from Mrs. Sutter | 600.00 |
| | $2,600.00 |

*Contra.*

| | | |
|---|---:|---:|
| "By fees for writing four warranty deeds. | $ 20.00 | |
| By fees for writing three deeds of trust | 15.00 | |
| By fees for examination of title and first certificate | 20.00 | |
| By fees for two additional certificates | 20.00 | |
| By fees for commission on $2,600 | 65.00 | |
| By fees for cash paid for recording deed | 10.00 | |
| By fees for cash paid for making three sets of notes | 30.00 | |
| By fees for cash paid for Charles E. Page | 975.00 | |
| By fees for cash paid for Mary E. Sanguinett | | 600.00 |
| By fees for cash paid for Charles C. Sanguinett | | 400.00 |
| By fees for cash retained to pay Butchers & Drovers Bank | 300.00 | |
| | | $2,455.00 |

Balance........ ...... ...... ........$  145.00

"Of the above balance you are entitled to three-fourths, equal $108.75; and it is understood that we are to receive one-

fourth of the net profit received from the sale of the thirteen-eightieths of the land in said tract purchased from Page and the two Sanguinetts, after paying all the expenses, including amounts secured by deed of trust and interest.

"Sterling & Webster."

At this date conveyances from Page, Charles C. Sanguinett, Mary E. Sanguinett, Amanda E. Sanguinett and Marshall P. Sanguinett to Schueler had already been made and procured under the contract, the conveyance of Marshall P. having no other consideration than the contract. Afterwards on the 10th of April, 1878, the plaintiff, Annie E. Sanguinett conveyed her interest in the real estate to defendant Webster in pursuance of and for no other consideration than said contract, reciting her title in the deed as having been acquired from Caroline Cozens "by deed dated April 11th, 1877, and recorded in book 579, page 481, of the St. Louis City Records."

It further appears from the evidence that these six interests of which the defendants thus obtained control under the contract, were undivided interests in a tract containing about eighty acres, and that in the meantime they had caused a suit to be instituted in the name of Shueler against the other parties interested in the tract, which resulted in a decree setting off these interests as lot one, two, three, four, five and fourteen, containing in all about nineteen and three-fourths acres. The lot of each of the plaintiffs herein containing about three acres.

Afterwards on the 19th of June, 1878, Schueler by his deed of that date conveyed said lots one, two, three, four and fourteen to the defendants, who, by that deed, and the aforesaid deed from the plaintiff Ann E. Sanguinett, having acquired all the title of all of said parties to the said nineteen and three-fourths acres of land, continued thereafter to hold the same until the 29th of March, 1889, when they sold the property to Richard M. Scruggs for the sum of sixteen thou-

sand dollars, and conveyed the same tto him by their deed of that date, in which, however, the consideration was recited as only twelve thousand dollars.   A few days after the sale and transfer Mr. Sanguinett becoming advised thereof by seeing the deed of record, demanded a settlement of the defendantts, and failing to get it, this suit was instituted on the 18th of May, 1889, the plaintiffs claiming in their original petition then filed, as they have in every amended petition since, that the wife, Annie E. Sanguinett, was the beneficiary of the contract, the real panty in interest, entitled to the profits of the venture and to call upon the defendants for an account thereof.

    Although no formal assignment was proven, from the foregoing evidence and the facts and circumstances disclosed thereby, the court was well warranted in finding an assignment by Marshall P. Sanguinett to his wife of the cause of action sued on, for it is now well-settled law that such assignments may be made by parol, and that no particular form of words is necessary.   "Any language or act which makes an appropriation of a fund amountts to an equitable assignment of that fund."    [2 Am. and Eng. Ency of Law (2 Ed.), 1055, 1056; Macklin v. Kinealy, 141 Mo. 113; Smith v. Sterritt, 24 Mo. 260.]

    The intent of the husband to transfer, the acceptance of the transfer by the wife, notice to the defendants and recognition thereof by them, may all be well inferred from the evidence.   The validity of the transfer so far as the defendants are concerned, is in no way affected by the fact that it may have been made on a day other than that alleged in the amended petition, that variant dates therefor may have been assigned in the several petitions, tthat from the evidence no particular date can be fixed upon for the assignment nor by the fact that the husband may have said when requesting that the statement be made in his wife's name, that he wanted it so made because "there was a judgment against him, and he had

various creditors, and he wanted to tell them that he had no interest in this property, and he wanted this statement to back him," and was then financially embarrassed. [Sauter v. Leveridge, 103 Mo. 615; Reid v. Mullins, 48 Mo. 344; Gowan v. Gowan, 30 Mo. 472; Wolff v. Matthews, 39 Mo. App. 376; Brown v. Thayer, 12 Gray, 1.] Nor is the probative force of the evidence showing an assignment impaired by the fact that in the petitions preceding the one upon which the case was tried it was claimed that the contract was originally made for the benefit of Mrs. Sanguinett. The fact that it may have been so intended in the beginning, is not inconsistent with an assignment in fact of the cause of action afterwards. At all events Mr. Sanguinett is by the pleadings forever estopped from asserting any right to the fund sued for, and the defendants will be fully protected by accounting to Mrs. Sanguinett therefor.

(3) It is next contended the plaintiffs' action must fail for want of proof of Adele Tholozan's title to the premises, and of the conveyance of Caroline Cozens' interest to Mrs. Sanguinett. It is sufficient to say in answer to this contention that defendant Webster's deed from Mrs. Sanguinett recited the conveyance from Mrs. Cozens, and that the title of Mrs. Tholozan was not in issue in this action. The plaintiffs are suing for an accounting of the proceeds actually received by the defendants for the sale and transfer of the title which they accepted from the plaintiffs under the contract, and with this money in their pocket, they are in no position to question the title which they accepted and transferred for that fund. No authority need be cited in support of this proposition.

(4) Before hearing the evidence the referee, at the instance of each of the parties, made an order requiring the other to file an account, in pursuance of which, the plaintiff filed a detailed statement of rents received and the defendants filed a detailed account of their expenditures and each filed their exceptions to the account filed by the other. The only

items excepted to by the defendants in plaintiffs' account, were two charges of commission for collecting rents amounting to $161.20, and one charge for repairs amounting to $27. The only exception to the amounts stated to have been received for rents, was that "the total of said amounts is $40 less than the total amount actually collected by the said Sanguinett." After the issues upon plaintiffs' account of the rents had been thus limited and defined by the defendants, and after all the other evidence had been heard by the referee, the defendant Flanagan was called to the stand and asked if he had any conversation with Marshall P. Sanguinett prior to April 18th, 1889, who testified as follows:

"A.    Numbers of times."

"Q.    I will ask you as to what amount, if any, he told you he was collecting from that property? . . . . . .

"A.    About four hundred and twenty dollars a year."

Thereupon the defendants announced that they had closed their case.

The referee in his finding and report in effect sustained all the defendants' exceptions to the plaintiff's account, rejected the items excepted to, for which plaintiff claimed credit, charged her with the $40, adopted the account thus amended and charged her accordingly. To his action in this behalf the defendants upon the filing of his report excepted. Their exceptions were not sustained, and solely on this evidence of Flanagan we are asked to convict the court of error in not charging Mrs. Sanguinett with a much larger amount than was thus accounted for because plaintiff's account was not verified by affidavit, and Mr. Sanguinett after the delivery of this evidence was not called to verify the account or contradict Flanagan.

Considering the vague and indeterminate character of the declaration testified to by that witness, the circumstances under which the evidence was elicited, the manner in which plaintiffs' detailed statement of all the receipts for rent was treated

by the defendants on the hearing before the referee; the opportunity afforded them for examination and criticism thereof, and the result as shown by their written exception thereto; and in view of the fact that Mr. Sanguinett had before testified in the case that the receipts of rent for the whole tract had been about $200, and that he kept an account of the rents in his books, we think the court was warranted in holding that the statement was better evidence of the actual receipts of rent than this loose declaration testified to by Flanagan, and hence we conclude that the court committed no error in refusing to sustain defendants' exceptions to the finding of the referee as to the amount of rents chargeable to Mrs. Sanguinett.

(5) The net profits of this venture, as found by the referee, after returning to the partners the amount of capital put in by each, with six per cent interest from the time of investment, to the eighteenth of April, 1889, when the partnership property was disposed of, was $10,604.96, of which the plaintiff had in her hands the sum of $1,109.96, and the defendants the sum of $9,495, and stating the account between them upon this basis, the balance found to be due the plaintiff was $6,843.76, upon which the defendants were charged with interest at six per cent compounded annually. The defendants complain of the compounding of the interest, and we think this complaint is well grounded. Interest is the creature of statute; under the statute parties may contract for compound interest; *strictissimo jure* without such contract express or implied there can be no compound interest. [Gas Light Co. v. St. Louis, 84 Mo. 202; s. c., 12 Mo. App. 573.] There are many cases, however, in which courts of equity, to subserve the ends of justice, may and do order the interest to be computed with rests, of which our reports afford numerous examples. [Frost v. Winston, 32 Mo. 489; In re Davis, 62 Mo. 450; Williams v. Petticrew, 62 Mo. 460; Scott v. Crews, 72 Mo. 261; In re Camp, 74 Mo. 192; Pomeroy v. Benton,

77 Mo. 64; Cruce v. Cruce, 81 Mo. 676; In re Murdoch & Dickson, 129 Mo. 488.] In Cruce v. Cruce, *supra*, the precedent cases in this State were reviewed, as well as many from other jurisdictions, and the underlying principle upon which such orders rest deduced, and stated as follows: "All orders for periodical rests and for compounding interest should be adopted, not for punishing the delinquent trustee, but for the purpose of attaining the actual or presumed gain." A doctrine subsequently approved in the case of Bobb v. Bobb, 89 Mo. 411. In this case there was no room for a presumption of gain. The actual gains had in fact been ascertained, a part of them found to be in the hands of the plaintiff, and a part in the hands of the defendant. The former was just as much a trustee of the fund in her hands, as was the latter a trustee of the funds in their hands. In fact they were partners in those gains, and it was just as much the duty of one as it was the other, to account. This both refused to do; the plaintiff on the ground that she had received nothing on partnership account, the defendants because of plaintiff's refusal to account for the rents which she had in fact received on partnership account. And as a consequence within one month after the property was sold this suit was commenced and since, as was to be expected, they have been fighting each other at arms length without any remarkable display of frankness or candor on either side. In this respect the honors are about even between them. It appeared very satisfactorily from the undisputed evidence in the case that the insertion of twelve instead of sixteen thousand dollars as the consideration in the deed from defendants to Scruggs was done at the request of the purchaser for his business purposes, and with no sinister motive upon the part of the defendants. No loss to plaintiff or profit to the defendants accrued by reason of that fact, or could have accrued by that or any other act of defendants as far as the evidence herein discloses, except the loss to the plaintiff of the value of the use of the money found to be due her by

the referee on settlement of the partnership account, which is fixed by law at six per cent per annum, and this is all that ought to have been allowed her upon that balance. The compounding of the interest was error. This case does not come within the principle upon which rests the authority of courts of equity to charge trustees with compound interest. In this connection it may be as well to dispose of the next assignment. On the evidence of defendant Webster that the agreement was that "we were to pay the taxes and have that back with ten per cent interest" and that "we were to have back all our money with ten per cent interest," defendants contend that the court erred in not allowing defendants interest at that rate upon all their advancements. Whatever view the court may have taken of the whole evidence upon this subject the court did not err in adjusting the account upon the basis of six per cent interest to each of the parties upon the amount of the capital contributed by each to the venture, as no equitable principle required a distinction in this matter; and the contract being verbal no higher rate of interest than six per cent could have been allowed under the contract.

(6) The referee having allowed the defendants interest on all the money actually invested and expended by them in the venture properly rejected the items of interest, commissions, and expenses, charged in their account and incurred in securing loans upon the property, by which they were enabled to carry out their part of the contract. It does not at all follow because plaintiffs consented that they might raise this money on the property that they should be charged with a proportionate share of the expenses of raising it. This was expense properly chargeable to the capital stock, which defendants contributed, and on which they were allowed interest and not to the expense account of the venture. In this regard the court committed no error in approving the report of the referee.

(7)   The defendants having been credited with all the money by them invested, with interest from the time it was put into the venture, and the plaintiffs having been charged with all the rents received from the premises which was the stock in trade, upon the plainest equitable and business principles the plaintiffs were entitled to be credited with the value of the real estate which they contributed to the stock in trade with like interest from the time that real estate was put in, and the court committed no error in so adjusting the account.

(8)   It is next contended, that as the original appointment of Edward P. Johnson as referee was illegal, his reappointment based upon his so-called resignation was error. There is nothing in this point.   The only illegality in his first appointment consisted in the failure of the court to first afford the parties an opportunity to agree upon a referee (State ex rel. v. Johnson, 132 Mo. 105).   That error the court corrected as soon as advised thereof, afforded the parties the required opportunity to agree, and upon their failure to do so had as much authority to appoint Mr. Johnson as any other competent person.

(9)   For the success of this enterprise it was necessary that partition of the eighty acres should be made in kind and that the shares of the parties mentioned should be set off together.   The evidence tends to prove that this necessity was provided for in the contract, by which $500 was to be allowed for that service, and that the service was rendered by the defendant Webster.   The court first allowed him a fee of $500 in the partition suit, but afterwards reduced it to $300, and the remaining $200 they charged to the account of this venture.   The only reason assigned by the referee for not allowing this charge, is "that this is an individual claim of Mr. Webster, and that it does not appear that the agreement was before the court in the partition suit, when it reduced the allowance of the fee from $500 to $300."   The action of the court upon the fee of plaintiffs' attorney for professional services, in the partition suit could in no way affect the con-

tractual obligation of the partnership to Mr. Webster for this service and if he chose to give the benefit of that obligation to the firm of Webster & Flanagan by making an equitable assignment of the balance due thereon to them, as he has done, by charging it in this account and thereby estopping himself from ever hereafter making an individual claim therefor; the plaintiffs have no reason to complain. The referee erred in rejecting this charge.

(10) The defendants in their account charged all the costs in the partition suit to this venture. The proportionate share of the parties herein thereto was allowed by the referee, and the share properly chargeable to the other parties to that suit was rejected; and this is complained of as error. The ground upon which the excess of this charge was disallowed is thus stated by the referee:

"Defendants are allowed their proportionate share of these costs and interest, and the remainder of the claim is disallowed, for the reason that defendants were, so far as the controversy is concerned, the real plaintiffs in the case, and trustees in addition, and it was their plain duty to have collected the costs paid out by them, of the other parties, and were entitled to a judgment for that purpose, which no doubt could have been enforced. The fact that plaintiff M. P. Sanguinett promised to collect the remainder of these costs from the other parties, for whom he was agent, and failed to do so, or if he collected it, failed to pay it over to defendants, does not excuse the defendants, for the reason that this promise was made long after he ceased to have any interest in the property, and there is no evidence to show that he had any authority from the other plaintiff to make such a promise, or to discharge defendants from their liability. As the evidence stands, he is in the attitude of an agent for defendants in this particular, and they are liable for his default, if he has defaulted." This statement is a sufficient answer to this assignment of error.

(11) The evidence tended to prove and the court found that the property "should be sold by the defendants," and out of

the proceeds of the sale "all expenses" should be paid before any distribution should take place.

It further appears from the evidence that the sale was effected by the firm of Hammitt, Anderson & Wade, who were engaged in the business of buying and selling real estate for others on commission, as defendants were not. That while the property was sold by them for $16,000, they charged and retained for their commission on the sale the sum of $600 leaving the net proceeds of the sale only $15,400. The defendants were charged in the account stated by the referee with $16,000, the gross proceeds of the sale and the counter charge in defendants' account for the $600 thus paid for this commission the referee refused to allow, and his action was sustained by the court. In this we think error was committed. While the defendants were invested by the contract with the power and charged with the duty of selling, the duty to sell was as holders of the legal title for the benefit of the concern, and as such sales are ordinarily best effected through such agencies as was here employed, for which a commission is usually paid, and as the commission in this instance was a reasonable one, it should have been allowed as part of the expenses contemplated by the contract.

(12) In passing, it may be as well here to remark, that the fact that three of the items of defendants' account for expenses incurred by them in procuring the loans which enabled them to carry out their contract, were included in the statement to Mrs. Sanguinett of the twelfth of September, 1877, affords no ground for charging them to her on final settlement. There is no element of estoppel in that fact. And further that the defendants are not injured in any manner by the failure of the court to rule upon their pending exceptions before re-referring the account to the referee, or in failing to formally rule upon them afterwards. Nor by the fact that the court may not have set out the contract as fully as might have been done in either the interlocutory or final decree. Tha

contract and the court's construction of it, are demonstrated by the account stated by the referee, the approval thereof by the court, and its final judgment thereon.

(13)   It is next contended that the court committed error for which the judgment should be reversed, in overruling the motion for rehearing on the same day it was filed.   Conceding error in this particular, it is not seen how the defendants' interests have been injuriously affected thereby, since by appeal the defendants have secured as thorough a rehearing of the case here as they could have had had the motion been taken under advisement until the next day and any errors that court may have committed affecting the merits of the case may be corrected here.

After a careful consideration of the case on the whole record the only errors we find of that character are those hereinbefore mentioned.

| | | |
|---|---|---|
| These errors may be corrected by deducting from the amount found to be in the defendants' hands ........ ........ ..$ | | 9,495.00 |
| The aforesaid sum of.............$200.00 | | |
| with six per cent interest thereon from October 24, 1877, to April 18, 1889 ...... ............. ....... | 137.80 | |
| And the aforesaid sum of.......... | 600.00 | 937.80 |
| | | |
| Leaving the actual amount in defendants' hands on the eighteenth of April, 1889, the sum of...................... ....$ | | 8,557.20 |
| Which added to the amount found in plaintiffs' hands .... ........... ....... .... | | 1,109.96 |
| | | |
| Would make the net profits..........$ | | 9,667.16 |
| Of which amount, defendants were entitled to, one-fourth ...... ...... ........ .... | | 2,416.79 |

Which should be deducted from the said sum of $8,557.20, leaving a balance of . .$  6,140.41 which the defendant ought to have accounted for to Mrs.

Sanguinett at that date; and for which amount, with six per cent simple interest from that date, she ought to have had judgment.

The judgment of the circuit court is, therefore, reversed; and the cause will be remanded with directions to the circuit court to enter judgment against the defendants in favor of Mrs. Sanguinett for the said sum of $6,140.41, with interest, as aforesaid at six per cent from April 18, 1889, to the date of the judgment.

All concur.